JENNIFER RAE GUNTER
Email: Jennof4@gmail.com
1601 G St., The Dalles, OR 97058
Phone: 541-993-5366
ROBERT JAY SCHWARTZ
Email: udidya@gmail.com
3135 Mill Creek Road, The Dalles, OR 97058
Phone: 541-296-8988
HOLLY LYNN GOVE
Email:  Hollygove1969@gmail.com
421 W. 15th St, The Dalles, OR 97058
Phone: 541-993-4707
CHELSEA ELIZABETH PERRITT
Email: chelseaperritt@gmail.com
219 W. 14th Street, The Dalles, OR 97058
Phone: 503-437-8370

Plaintiffs, appearing Pro Se

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION


| | |
|---|---|
| JENNIFER RAE GUNTER, individually and as a natural parent of A.G.; ROBERT JAY SCHWARTZ, individually and as a natural parent of J.S.; HOLLY LYNN GOVE, individually and as a natural parent of M.G.; CHELSEA ELIZABETH PERRITT, individually and as a natural parent of L.P. | Case No.: 3:21-cv-01661-YY |
| Plaintiff(s), | |
| v. | PLAINTIFF'S BRIEF IN RESPONSE OF MOTION TO DISMISS |

NORTH WASCO COUNTY SCHOOL
DISTRICT BOARD OF EDUCATION;
CAROLYN BERNAL, in her individual
capacity and in her official capacity as
Superintendent of the North Wasco County
Public School District; and REBECCA
THISTLETHWAITE, DAWN RASMUSSEN,
DAVID JONES, JOHN NELSON, BRIAN
STEVENS, JOSE APARICIO, JUDY
RICHARDSON, all in their individual capacities
and in their capacities as members of the North
Wasco County School District Board of
Education,

                    Defendant(s)

Plaintiffs, Jennifer Rae Gunter, individually and as a natural parent of A.G.; Robert Jay Schwartz, individually and as a natural parent of J.S.; Holly Lynn Gove, individually and as a natural parent of M.G.; Chelsea Elizabeth Perritt, individually and as a natural parent of L.P. (collectively, "plaintiffs") respectfully submit the Response to Defendants' "Motion to Dismiss."

## LR 7-2 CERTIFICATION

The undersigned hereby certifies that this Response complies with the applicable word count limitation because it contains 4,869 words, including headings, footnotes, and quotations, but excluding the caption, and signature block.

## OVERVIEW

The mask mandates imposed by the Defendants of the North Wasco County School District (NWCSD) are not based on science and instead cause irreparable harm (i.e. child abuse) given the extreme known and unknown side effects.  Plaintiffs' have natural rights to represent

their children under Article I, Section 1. Natural rights inherent in people. We declare that all men, when they form a social compact are equal in right: that all power is inherent in the people, and all free governments are founded on their authority, and instituted for their peace, safety, and happiness; and they have at all times a right to alter, reform, or abolish the government in such manner as they may think proper. Additionally, under Article I, Section 33. Enumeration of rights not exclusive. This enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people, Plaintiffs have claimed such rights.  The Defendants have an obligation, based on the Oaths they took and the Bonds they are required to hold, to uphold the Constitution and the duties of their office.


**FACTS**

NWCSD did not consider, nor has been able to demonstrate they considered, parental concerns in adopting the mandate, and should provide the ability for students, and/or guardians on behalf of their children, to choose to opt-out based on physical, mental, emotional, or psychological health concerns, as well as on the basis of religious belief, moral conviction, or other fundamental rights retained by the people, the impairment of which may negatively impact such students physical, mental, emotional or psychological health. How would such a school district know if they do not have an open (questions and answers) dialogue with parents or take a survey of each individual child and family dynamic to understand each child's position within such district? NWCSD generally applied such mandate with no regard for individual parents or students following as defense counsel even stated "status quo" of OAR 333-019-1015, which is an adopted rule, nothing has been made law by the legislative branch.

Oregon Administrative Rules are created by most agencies and some boards and commissions to implement and interpret their statutory authority.  NWCSD students are being subjected to orders created and issued by bureaucratic edict outside the constitutionally mandatory legislative process.

Additionally, ORS 339.288, which is a LAW enacted by our Legislators, **Prohibitions on** use of certain restraints

(1)     The use of the following types of restraint on a student in a public education program is prohibited:

(g) **Any restraint that places, or creates a risk of placing, pressure on a student's mouth**, unless the restraint is necessary for the purpose of extracting a body part from a bite.

(h) **Any restraint that impedes, or creates a risk of impeding, breathing.**

**(Emphasis added)**

Defendants state on Page 11 of their Motion to Dismiss, "As argued above, the decision to impose mask mandates on schools was made by the State of Oregon, not these defendants.". However, under **ORS 332.072 Legal Status of School Districts,** All School Districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, **district school boards have control of the district schools** and are responsible for educating children residing in the district. (1965 c.100& 139).  In fact, they are in control and can make their own decisions based on the Oaths they take and the health, safety and welfare of their students and faculty**.  (Emphasis added)**

Even the Centers of Disease Control and Prevention (CDC) Recognizes categories of people as **exempt** from the requirement to wear a mask, Including children under age two; a person with a disability who cannot wear a mask, or cannot safely wear a mask, for reasons related to the disability; and persons for whom wearing a mask would create a risk to workplace health, safety, or job duties (see "Guidance for Wearing Masks", "Who should or should not wear a mask" at https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html). Similarly, mask wearing can interfere with the learning and general well-being of school-aged children, related to their age and development; their disabilities, and physical and mental health attributes; and classroom health, safety, and productivity. Has NWCSD taken such care for their students by generalizing their actions? Those best suited and entitled to address individual needs for the physical, mental, and developmental well-being of their minor children, parents or guardians, in consultation with their Children's Health care provider as appropriate, should be afforded the ability to opt out of mask requirements on behalf of their children. Negligent applicability of status of all children/staff is the action taken by NWCSD.

In addition to major health risks, research has shown that **masks adversely impact** respiratory function; mask trap exhaled disease particles in the mouth/masks, increasing infectious load and increasing disease potential; masks may give a false sense of security-having users forgo more effective practices such as frequent hand washing or being in a well- ventilated room-in direct contradiction of WHO guidance; masks lower oxygen levels in the blood so SARS Co V2 can enter cells more easily (which happens when arterial oxygen levels decline) so wearing a mask actually increases COVID-19 severity and increases the risk of contracting COVID-19 as well as other respiratory infections; masks compromise communications and

reduce social distancing; mask worn imperfectly are dangerous and will collect an colonize viruses, bacteria, mold, and increase where's exposure to cancer causing fibre; masks are not needed for those without symptoms given contact tracing studies show that asymptomatic carrier transmission is very rare; and masks are dangerous and contraindicated for a large number of people with pre-existing medical conditions and disabilities, as well as to a minor child still growing brain that does not mature until the age of 25. This and all above stated information is very much in the realm of public interest.

Furthermore, a recent article published by the international Journal of Environmental Research and Public Health and such study was shared with all defendants, within that study it has been discovered that excess mask usage causes a new disease "Mask-Induced Exhaustion Syndrome". See Kisienlinski, K., et al., "Is Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" International journal of Environmental Research and Public Health (April 20, 2021) (Publicly available at https://www.mdpi.com/1660-4601/18/8/4344).

Given Defendants refused to hear or act upon Plaintiff's request to halt the mask requirement or for an Industrial Hygiene Test, Plaintiff Gunter ran a test using a Storex O2 & CO2 Analyser on her own child and posted to Youtube for this courts review.  Tests were performed using a K95 Mask and Generic Surgical mask while her child was at rest.

At 1:39 of the K95 test, Plaintiff's child showed 2.71% $CO_2$ level (5x higher than the OSHA Limit – **See Exhibit O of Complaint**) -

https://www.youtube.com/watch?v=NifpIynmviA

At 2:17 of the Surgical Mask test, Plaintiff's child showed 2.62% $CO_2$ level (5x higher than the OSHA Limit - **See Exhibit O of Complaint**) -

https://www.youtube.com/watch?v=h8dGtY47qGY

Rather than advocate the use of dangerous an ineffective masks NWCSD should ensure its schools have adequate ventilation and filtration controls- most of which would not cost significant funds. Substantial mitigation of SARS- CoV- 2 particles could be immediately achieved by: (i) Opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols), (ii) Setting fresh air dampers to maximum open on HVAC systems, (iii)n overriding HVAC energy controls, increasing the number of times indoor air is recycled, (iv) installing needlepoint ionization technology two HVAC intake fans, and (v) instilling inexpensive ultraviolet germicide devices into HVAC systems. See Employers guide to Covid-19 cleaning and disinfection in non-healthcare Workplaces," American Industrial Hygiene Association (August 11, 2020) (Publicly available at https://aiha-assests.sfo.digitaloceanspaces.com/AIHA/resources/Guidance-Documents/Employers-Guide-to-COVID-Cleaning-and-Disinfection-in-Non-Healthcare-Workplaces-Guidance-Document.pdf). See also Occupational Safety and Health Standards 29 CFR 1910.134 (a)(1) ("In the control of those occupational diseases caused by breathing air contaminated with harmful dusts, fog, fumes, mist, gases, smokes, sprays, or vapors, the primary objective shall be to prevent atmospheric contamination. **This shall be accomplished as far as feasible by accepted engineering control measures** ( for example, enclosure or confinement of the operation, general and local ventilation, and substitution of less toxic materials). **When effective engineering controls are not feasible, or while they are being instituted, appropriate respirator shall be used pursuant to this section.")** (emphasis added).

Furthermore, through information and belief, NWCSD has **not** supplied or provide such items as standalone HEPA Filtration Units or Fans in NWCSD, and certainly **not** in every classroom.

## ARGUMENT

### 1.    Legal Standards

For a preliminary injunction to be granted, the plaintiff will need to demonstrate 4 elements:

a.   Likelihood of success – Plaintiff's has found and cited extensive scientific research on mask wearing and the health hazards they pose.  Additionally, Plaintiff has obtained a sworn Declaration from Stephen E. Petty (See **Complaint Exhibit AC**) , an expert in the field of Industrial Hygiene (and expert witness in multiple court cases) who has testified as the futility and danger caused by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19.  Defendants do not cite any science, instead they are monetarily incentivized to place masks on the children based on "CDC recommendations" in order to obtain Federal Funding under the ARP/ESSER programs.

b.   Irreparable harm in the absence of injunctive relief
     An injunction will help prevent damages which are cumulative, irreparable, and for which damages furnish an entirely inadequate remedy or redress.  One cannot put a remedy on degraded health, drops in oxygen, increased carbon dioxide, or the mental and physical effects of wearing a mask.

c.   Balance of equities tips in their favor

Plaintiffs can show, via the science, that the negative effects of mask wearing greatly outweigh the purported health benefits of wearing a mask to avoid spreading Covid-19.  States across this country, like Florida who has a population of 21+ million souls have not put their children and citizens in masks and have proven it did not drive community transmission of Covid-19. (**see Exhibit 1** – FL's Executive Order 21-175)

Furthermore, the recent decision from the Cole County Circuit Court in *Robinson v. Missouri Dept. of Health and Senior Services (20AC-CC00515 – Cole County Cir. Ct. Nov. 22, 2021)* is consequential as it relates to public health orders issued by an administrative agency who is an unelected administrative official.  The case was about whether Missouri's Department of Health and Senior Service regulations can abolish representative government in the creation of public health laws, and whether it can authorize closure of a school or assembly on the unfettered opinion of an unelected official.  The Cole County Circuit Court found that it cannot as it violates separation of powers under Missouri's Constitution under Article II, Section 1. Additionally, they found that it violates the Missouri Administrative Procedure Act , Mo. Rev. Stat. Section 536.010.

In parallel, we have under the Oregon Constitution Article III Section 1. Separation of powers:

The powers of the Government shall be divided into three separate branches, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these branches, shall exercise any of the functions of another, except as in this Constitution expressly provided.

[Constitution of 1859; Amendment proposed by H.J.R. 44, 2011, and adopted by the people Nov. 6, 2012]

Additionally, Oregon Administrative Procedures Act under ORS 183.310 states:

(1) "Agency" means any state board, commission, department, or division thereof, or officer authorized by law to make rules or to issue orders, **except those in the legislative and judicial branches**

Any law "which attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer, and for that reason is unconstitutional." Lux v. Milwaukee Mechanics Isn. Co. 15 S.W.2d 343 (Mo 1929).

d. Injunction is in the public interest - The masking requirement causes immediate and irreparable harm to students, staff, and the community.  The science, based on the experts and various studies denotes hazards too great to list.  Some of which are unknown at this time given the extensive amount of time people are wearing them and re-breathing diminished oxygen levels.  Harm will only be known as time passes and cumulative issues begin to appear.

e. Pennsylvania Supreme Court throws out mask mandate for schools under Case No. 83 MAP 2021 in Parents v. Acting Secretary of the Pennsylvania Department of Health (December 10, 2021).  The court ruled that the masking mandate, which also applies to child care facilities, is not valid because it was imposed by Democratic Gov. Tom Wolf's acting health secretary without legal authorization.

2.    **Defendant's Parental and Constitutional Claims**

Defendant's argue that NWCSD enacted/adopted a mask mandate based on an Oregon

adopted rule which it is reasonably related to public health and it does not violate the

constitution. Governmental entities and political subdivisions do not have inherent rights

and powers; people do. Plaintiffs argue through knowledge and belief that all rights,

powers and authority not granted to governmental entities reside in the people. It seems

the defendants are arguing that this general authority is broad enough and Oregon should

be declared so, by the court to encompass a mandatory masking against communicable

diseases by NWCSD.

Additionally, under Article XV, Section 3. Oaths of office. Every person elected or

appointed to any office under this Constitution, shall, before entering on the duties

thereof, take an oath or affirmation to support the Constitution of the United States, and

of this State, and also an oath of office. Therefore, the Defendants and the Judge(s) in this

case shall uphold the Constitution as they swore an oath.

The Declaration of Independence says: "We hold these Truths to be self-evident, that

all Men are created equal, that they are endowed by their Creator with certain unalienable

Rights, that among these are Life, Liberty, and the Pursuit of Happiness——That to secure

these Rights, Governments are instituted among Men, **deriving their just Powers from**

**the Consent of the Governed**,".

a.    **Defense claims: Without counsel, plaintiffs cannot represent the interests of their**

**minor children.**

Rights cannot be taken away, **only given under consent** and the Plaintiffs have not

given consent to the NWCSD to force their children into wearing a mask that impedes

their breathing by dropping their oxygen intake and increasing their concentration of Carbon Dioxide to a point **5 times higher than OSHA Standards**.

The Defendants would have this court believe they have a claim that Plaintiffs cannot represent their minor children when they, the Plaintiff's, have never given consent to allow any person, legal system, or institution such power.  Nor can they claim a minor must be represented by legal counsel as there is nothing in the Constitution that specifically states such an action.  Article I, Section 33 specifically states enumeration of our rights are not exclusive. Courts have discretion on this matter. Plaintiffs claim a liberty interest in the care and custody of their children under the Oregon Constitution. Plaintiffs absolutely have that constitutional interest. Under certain circumstances, for the welfare of their children, governmental entities can step in and usurp those rights in the event of that unusual circumstance, in which that happens, they are not applicable here as plaintiffs have not been deemed unfit to provide for the care and custody of their children.

Plaintiffs' liberty interests, in the care and custody of their children, is being infringed upon by NWCSD, which in fact is a governmental entity and a political subdivision. Does NWCSD have the authority to impose such an infringement? NWCSD has **general authority** of schools to do all things necessary and lawful to conduct an efficient free school.  They are indeed acting unlawful and out of their scope of authority to the point of infringing on the constitutional rights of parents and students, especially considering specific and limited authority of the schools to act in instances of communicable diseases. Defendants are not licensed medical practitioners and are operating without a medical license by imposing such medical device mandates and injecting NWCSD families into

medical practices without consent or without due cause. NWCSD are generally elected to serve on a school board of education, NOT on a public oversite medical board.

**b. Defense claims: Plaintiffs cannot succeed on their claims under the U.S. Constitution**

Under Article I Section 33. Enumeration of rights **not exclusive**. This enumeration of rights, and privileges shall not be construed to impair or deny others retained by the people. (emphasis added).

Definitions pertinent to Article I Section 33 from Merriam-Webster (since 1828) which was in effect at the time the Constitution of Oregon was written and signed.

Definition of *enumeration*

**1:** the act or process of making or stating a list of things one after another

**Definition of *right***

**2:** something to which one has a just claim: such as

**a:** the power or privilege to which one is justly entitled

Full Definition of *exclusive*

**hale (Entry 1 of 2)**

**1a:** excluding or having power to exclude

**b:** limiting or limited to possession, control, or use by a single individual or group

U.S. SUPREME COURT DECISION – "The common law is the real law, the Supreme Law of the land, the codes, rules, regulations, policy and statutes are "not the law". Self v. Rhay, 61 Wn (2d) 2614.

U.S. SUPREME COURT DECISION – "All codes, rules, and regulations are for government authorities ONLY, not human/Creators in accordance with God's Laws.  All codes, rules and regulations are unconstitutional and lacking due process…" – Rodriques v. Ray Donavan, U.S. Department of Labor, 769 F. 2d,1344, 1348 (1985).

U.S. SUPREME COURT DECISION – 1796 – "There, every man is independent of all laws, except those prescribed by nature.  He is not bound by any institutions formed by his fellowman without his consent". Cruden v. Neale, 2 N.C. 338 (1796) 2 S.E.

Davis v. Wechsler , 263 US 22, 24. "Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them."

Sherer v. Cullen , 481 F 946. We could go on, quoting court decision after court decision, however, the Constitution itself answers our question � Can a government legally put restrictions on the rights of the American people at anytime, for any reason? The answer is found in Article Six of the U.S. Constitution: Miranda v. Arizona, 384 U.S. 426, 491; 86 S. Ct. 1603 "Where rights secured by the Constitution are involved, there can be no 'rule making' or legislation which would abrogate them."

Marbury v. Madison, 5 U.S. (2 Cranch) 137, 180 (1803) "... the particular phraseology of the constitution of the United States confirms and strengthens the principle, supposed to be essential to all written constitutions, that a law repugnant to the constitution is void, and that courts, as well as other departments, are bound by that instrument." "In declaring what shall be the supreme law of the land, the Constitution itself is first mentioned; and not the laws of the United States generally, but those only which shall be made in pursuance of the Constitution, have that rank". "All law (rules and

practices) which are repugnant to the Constitution are VOID". Since the 14th Amendment to the Constitution states "NO State (Jurisdiction) shall make or enforce any law which shall abridge the rights, privileges, or immunities of citizens of the United States nor deprive any citizens of life, liberty, or property, without due process of law, ... or equal protection under the law", this renders judicial immunity unconstitutional.

3.  **Defendants Due Process Claims**

a.  Plaintiffs' procedural due process allegations do not state a claim for relief.

Plaintiffs cited relief asking for a temporary restraining order and preliminary injunction from the court.  Plaintiffs specifically asked for an TRO and preliminary injunction in which is staking a claim on their children's health by stopping the negligent infliction of distress to plaintiffs and their children as a result of masking and usurpation. Plaintiffs do not believe that you can put a monetary price in dollars on such an action and one's health based on man's inflicted "status quo" of dollar amounts when filing a lawsuit that is priceless!

ORS 332.072 Legal Status of School Districts

All School Districts are bodies corporate, and the district school board is authorized to transact all business coming within the jurisdiction of the district and to sue and be sued. Pursuant to law, **district school boards have control of the district schools** and are responsible for educating children residing in the district. (1965 c.100& 139). Is NWCSD immune from their oaths of office taken by choosing willfully not to uphold the constitution? One would hope as an elected official, an individual would know what the oath means before accepting positions which requires such an oath of the sacred law of the land. NWCSD have operated outside their scope with

mandating/prescribing devices and healthcare unjustly. In fact, the board did not abide by their constitutional oath by due process and prescribing healthcare with general applicability and assumption.

The Fourteenth Amendment embodies three different protections: (1) a procedural due process protection requiring the state to provide individuals with some type of process before depriving them of their life, liberty, or property. None have yet been afforded to Plaintiff thus far.

**b. Defense Claims: Plaintiffs' substantive due process allegations do not state a claim for relief**

Defense states that dictating a medical decision by the schools and state is an acceptable right to assume, but in fact they are null and void without complete voluntary release of human rights by and through informed consent by the parental party and by each soul occupying the human body. Parental rights and peoples inherit retained freedoms and civil liberties do not halt once a child or parent enters a NWCSD doorway, the thought even implied is absurd, shocking and disturbing. Viruses don't negate individual rights, nor do they negate the rights of the children to be exposed to forced drops of oxygen, mental harm, or should subject parents to negligent emotional distress or abuse guised under the greater good. Through knowledge and belief viruses have existed since the beginning of God's creation they are here to stay long after each soul's time on land expires. Governmental and School interest in the form of profit for masking by and though the required outline to receive governmental ARP (American Rescue Plan) funding is shocking. The land is occupied by the governed and not

Government. Facts are in the public's interest, not profit of which each family doesn't receive.

Will Oregon school boards assume and expect masking children and usurping parental rights and allowing violations of the constitution indefinitely?

Masking minors is not rationally related to any due process or scientific fact when there are multiple studies stating in fact the opposite. As stated above and in plaintiff's complaint, as well as their request in their TRO/Injunction. The Fourteenth Amendment embodies three different protections: (2) a substantive due process protection, which protects individuals from arbitrary acts that deprive them of life, liberty, or property. Staking claim on health and elimination of usurpation of parent's inherent rights as well as the elimination of negligent inflicted emotional distress by being violated on all such causes and to this day is still ongoing in fact.

Whether a court should issue a Preliminary Injunction involves consideration of (1) The threat of a repairable harm to the plaintiffs; (2) The state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) The probability that plaintiffs will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) " while no single factor is determinative, The probability of success factor is the most significant." Home Instead, Inc. v. Florance, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotations and citations omitted)

Plaintiffs demonstrate a likelihood of success on merits. NWCSD mandate is arbitrary and capricious because it's devoid of scientific evidence in

regarding/implementing such actions. NWCSD lacks evidence showing that mask mandates have a clear impact on preventing the spread of Covid-19 amongst school-age children. NWCSD did not properly consider all necessary reliance interest of Parents. Plaintiffs believe through information and belief that NWCSD looked only at evidence from interested parties in favor of the mandate, while completely ignoring evidence from interested parties in opposition. NWCSD ignored evidence showing that the mandate threatens devastating consequences to children/staff and parents throughout its District. Plaintiffs likely can show the NWCSD mandate is arbitrary and capricious because the evidence does not show a rational connection to support implementing the mask mandates, and such a broad scope, the unreasonable rejection of science and the hierarchy of controls for ventilation standards.

Plaintiffs have parental and constitutional sovereign interests and are likely to suffer a repairable harm without a preliminary injunction because they will be unable to enforce their rights for the care and custody of their children and guidance in their upbringing including free choices of medical decisions they choose or not choose to participate in. Plaintiffs are harmed because they cannot enforce their parental sovereignty. The injury that results when a parent cannot enforce "representation of their children" is irreparable. Affidavits filed in support of Plaintiffs motion for preliminary injunction shows the harm to the physical health and well-being of their children if the mandate is not enjoined.

The public has an interest in stopping the spread of COVID-19. No one disputes that goal. Regardless, the pandemic has continued for more than 20

months now and science shows that the masks are harmful and ineffective.
Vaccine rates rise every day, and more therapeutics and treatments for the virus
are available than ever before. The status quo of today, without the NWCSD mask
mandate, is still far better than the public faced even just months ago. What is
known based on evidence before the court is that the mandate will have a
crippling effect on a significant number of parents and the Plaintiffs. The
prevalent, tangible, and irremediably impact of the mandate tips the balance of
equities in favor of a preliminary injunction. Because it is evident that NWCSD
has significantly underestimated the burden that its mandate would impose on the
ability of parental rights in the Public's interest

**CONCLUSION**

Scientific evidence and studies by reputable experts and institutions show that masks do
not prevent Covid-19 disease transmission.  That science also shows masks reduce oxygen
levels, increase carbon dioxide to dangerous levels, and long-term use will have crippling side
effects.   The daily danger, if not remedied, of wearing a mask will cause irreparable harm to
developing children and is an constitutional violation towards Plaintiffs and inflict negligent
emotional distress and abuse.

Defendants have taken an Oath to uphold the constitution and the offices they hold.
Their own board policies note they are mandatory reporters of child abuse, yet they fail to
question policies that limit children's oxygen intake and restrict breathing, with known side
effects that cause deficiencies in learning which affects their basic educational rights.  Nor did
NWCSD do their own due diligence to see if their schools have the proper airflow and

ventilation to minimize the chances of airborne contaminants versus violating ORS 339.288. Defendants are blindly following an adopted rule, OHA and ODE programs based on "CDC Recommendations" and required if they want to participate in receiving the ARP/Esser Funding.

I ask this court, what is our children's health worth?  Does it depend on the funds NWCSD receive or can apply for from the Federal Government? Plaintiffs absolutely disagree nor have they given their informed consent too such acts to take place for themselves or their minor children.

## PRAYER FOR RELIEF

Plaintiffs' only hope that the Court allows this case to proceed so that we can demonstrate using evidence and testimony how our constitutional rights have been violated due to this unlawful mask mandate forced on students without parental consent.

We ask the court to deny defendants motion to dismiss with prejudice. If such a stance was taken the parents and children would lose their right to redress their grievances with the court, as well deprives parents of such right based on financial status for representation, and silencing parents' 1st Amendment rights of the US Constitution. As well as such violations of abuse to a minor remain unaddressed and ignored by the court. I ask the court to grant judgement on Plaintiff's behalf based on the facts set forth and our rights under the Constitution.

Respectfully submitted this 10th Day of December, 2021.

*/s/ Jennifer Rae Gunter*
1601 G St.
The Dalles, OR 97058

(Telephone) 541-993-5366

/s/ Robert Jay Schwartz ND LAC
3135 Mill Creek Road
The Dalles, OR 97058
(Telephone) 541-296-8988

/s/ Holly Lynn Gove
421 W. 15th St
The Dalles, OR 97058
(Telephone) 541-993-4707

/s/ Chelsea Elizabeth Perritt
219 W. 14th Street
The Dalles, OR 97058
(Telephone) 503-437-8370

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 21-175
### (Ensuring Parents' Freedom to Choose – Masks in Schools)

**WHEREAS**, a right to normal education is imperative to the growth and development of our children and adolescents; and

**WHEREAS**, last summer, at my direction, Florida's Department of Education ordered schools to be open for in-person instruction for five days per week to ensure the continued well-being of students and families; and

**WHEREAS**, schools – including those that did not require students to be masked – did not drive community transmission of COVID-19; and

**WHEREAS**, despite recent Centers for Disease Control and Prevention (CDC) "guidance," forcing students to wear masks lacks a well-grounded scientific justification; indeed, a Brown University study analyzed COVID-19 data for schools in Florida and found no correlation with mask mandates; and

**WHEREAS**, masking children may lead to negative health and societal ramifications; and

**WHEREAS**, studies have shown that children are at a low risk of contracting a serious illness due to COVID-19 and do not play a significant role in the spread of the virus; and

**WHEREAS**, forcing children to wear masks could inhibit breathing, lead to the collection of dangerous impurities including bacteria, parasites, fungi, and other contaminants, and adversely affect communications in the classroom and student performance; and

Exhibit 1

**WHEREAS**, there is no statistically-significant evidence to suggest that counties with mask requirements have fared any better than those without mask requirements during the 2020-2021 school year; and

**WHEREAS**, on April 29, 2021, Florida Surgeon General Dr. Scott Rivkees issued a Public Health Advisory stating that continuing COVID-19 restrictions on individuals, including long-term use of face coverings, pose a risk of adverse and unintended consequences; and

**WHEREAS**, on June 29, 2021, I signed into law H.B. 241, the Parents' Bill of Rights, which prevents the state, its subdivisions, or any governmental institution, from infringing on the fundamental rights of a parent to direct the upbringing, education, health care, or mental health of a minor child without demonstrating that such action is reasonable and necessary to achieve a compelling state interest and that such action is narrowly tailored and is not otherwise served by less restrictive means; and

**WHEREAS**, pursuant to Florida law, all parents have the right to make health care decisions for their minor children; and

**WHEREAS**, many school districts are scheduled to begin classes on August 10, 2021, which is less than two weeks away, and within four weeks virtually all public schools across Florida will be underway; therefore immediate action is needed to protect the fundamental right of parents to make health and educational decisions for their children; and

**WHEREAS**, Section 1003.22(3), Florida Statutes, mandates the Florida Department of Health to adopt rules, in consultation with the Florida Department of Education, governing the control of preventable communicable diseases, including procedures for exempting children from immunization requirements; and

**WHEREAS**, Florida's State Board of Education, the chief implementing and coordinating body of public education in Florida, has the authority to adopt rules pursuant to Sections

120.536(1), 120.54, and 1001.02, Florida Statutes, and may delegate its general powers to the Commissioner of Education; and

WHEREAS, pursuant to Section 1008.32(4), Florida Statutes, if the State Board of Education determines that a district school board is unwilling or unable to comply with the law, the State Board shall have the authority to, among other things, withhold the transfer of state funds, discretionary grant funds, discretionary lottery funds, or any other funds specified as eligible for this purpose by the Legislature until the school district complies with the law or state board rule and declare the school district ineligible for competitive grants; and

WHEREAS, given the historical data on COVID-19 and the ongoing debate over whether masks are more harmful than beneficial to children and to school environments in general, we should protect the freedoms and statutory rights of students and parents by resting with the parents the decision whether their children should wear masks in school; and

WHEREAS, we should equally and uniformly protect the freedoms and rights of students and parents across the state.

NOW, THEREFORE, I, RON DESANTIS, as Governor of Florida, by virtue of the authority vested in me by Article IV, Section 1(a) of the Florida Constitution, and all other applicable laws, promulgate the following Executive Order, to take immediate effect:

Section 1.  I hereby direct the Florida Department of Health and the Florida Department of Education, working together, to immediately execute rules pursuant to section 120.54, Florida Statutes, and take any additional agency action necessary, using all legal means available, to ensure safety protocols for controlling the spread of COVID-19 in schools that:

A.  Do not violate Floridians' constitutional freedoms;

B.  Do not violate parents' right under Florida law to make health care decisions for their minor children; and

3

C.  Protect children with disabilities or health conditions who would be harmed by certain protocols such as face masking requirements.

Section 2.  Any action taken pursuant to Section 1 above shall at minimum be in accordance with Florida's "Parents' Bill of Rights" and protect parents' right to make decisions regarding masking of their children in relation to COVID-19.

Section 3.  The Florida Commissioner of Education shall pursue all legal means available to ensure school districts adhere to Florida law, including but not limited to withholding state funds from noncompliant school boards violating any rules or agency action taken pursuant to Section 1 above.

Section 4.  This does not prohibit the Florida Legislature from exploring legislation to further protect the fundamental rights of students and parents to be free from excessive, harmful regulation in schools.

Section 5.  This Executive Order is effective immediately.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed, at Tallahassee, this 30th day of July, 2021

_____
RON DESANTIS, GOVERNOR

ATTEST:

_____
SECRETARY OF STATE

2021 JUL 30  PM 3: 45
DEPARTMENT OF STATE
TALLAHASSEE, FL
FILED

4

# STATE OF FLORIDA

## OFFICE OF THE GOVERNOR
## EXECUTIVE ORDER NUMBER 21-175
### (Ensuring Parents' Freedom to Choose – Masks in Schools)

**WHEREAS**, a right to normal education is imperative to the growth and development of our children and adolescents; and

**WHEREAS**, last summer, at my direction, Florida's Department of Education ordered schools to be open for in-person instruction for five days per week to ensure the continued well-being of students and families; and

**WHEREAS**, schools – including those that did not require students to be masked – did not drive community transmission of COVID-19; and

**WHEREAS**, despite recent Centers for Disease Control and Prevention (CDC) "guidance," forcing students to wear masks lacks a well-grounded scientific justification; indeed, a Brown University study analyzed COVID-19 data for schools in Florida and found no correlation with mask mandates; and

**WHEREAS**, masking children may lead to negative health and societal ramifications; and

**WHEREAS**, studies have shown that children are at a low risk of contracting a serious illness due to COVID-19 and do not play a significant role in the spread of the virus; and

**WHEREAS**, forcing children to wear masks could inhibit breathing, lead to the collection of dangerous impurities including bacteria, parasites, fungi, and other contaminants, and adversely affect communications in the classroom and student performance; and

Exhibit 1

**WHEREAS**, there is no statistically-significant evidence to suggest that counties with mask requirements have fared any better than those without mask requirements during the 2020-2021 school year; and

**WHEREAS**, on April 29, 2021, Florida Surgeon General Dr. Scott Rivkees issued a Public Health Advisory stating that continuing COVID-19 restrictions on individuals, including long-term use of face coverings, pose a risk of adverse and unintended consequences; and

**WHEREAS**, on June 29, 2021, I signed into law H.B. 241, the Parents' Bill of Rights, which prevents the state, its subdivisions, or any governmental institution, from infringing on the fundamental rights of a parent to direct the upbringing, education, health care, or mental health of a minor child without demonstrating that such action is reasonable and necessary to achieve a compelling state interest and that such action is narrowly tailored and is not otherwise served by less restrictive means; and

**WHEREAS**, pursuant to Florida law, all parents have the right to make health care decisions for their minor children; and

**WHEREAS**, many school districts are scheduled to begin classes on August 10, 2021, which is less than two weeks away, and within four weeks virtually all public schools across Florida will be underway; therefore immediate action is needed to protect the fundamental right of parents to make health and educational decisions for their children; and

**WHEREAS**, Section 1003.22(3), Florida Statutes, mandates the Florida Department of Health to adopt rules, in consultation with the Florida Department of Education, governing the control of preventable communicable diseases, including procedures for exempting children from immunization requirements; and

**WHEREAS**, Florida's State Board of Education, the chief implementing and coordinating body of public education in Florida, has the authority to adopt rules pursuant to Sections

120.536(1), 120.54, and 1001.02, Florida Statutes, and may delegate its general powers to the Commissioner of Education; and

WHEREAS, pursuant to Section 1008.32(4), Florida Statutes, if the State Board of Education determines that a district school board is unwilling or unable to comply with the law, the State Board shall have the authority to, among other things, withhold the transfer of state funds, discretionary grant funds, discretionary lottery funds, or any other funds specified as eligible for this purpose by the Legislature until the school district complies with the law or state board rule and declare the school district ineligible for competitive grants; and

WHEREAS, given the historical data on COVID-19 and the ongoing debate over whether masks are more harmful than beneficial to children and to school environments in general, we should protect the freedoms and statutory rights of students and parents by resting with the parents the decision whether their children should wear masks in school; and

WHEREAS, we should equally and uniformly protect the freedoms and rights of students and parents across the state.

NOW, THEREFORE, I, RON DESANTIS, as Governor of Florida, by virtue of the authority vested in me by Article IV, Section 1(a) of the Florida Constitution, and all other applicable laws, promulgate the following Executive Order, to take immediate effect:

Section 1.  I hereby direct the Florida Department of Health and the Florida Department of Education, working together, to immediately execute rules pursuant to section 120.54, Florida Statutes, and take any additional agency action necessary, using all legal means available, to ensure safety protocols for controlling the spread of COVID-19 in schools that:

A.  Do not violate Floridians' constitutional freedoms;

B.  Do not violate parents' right under Florida law to make health care decisions for their minor children; and

3

C. Protect children with disabilities or health conditions who would be harmed by certain protocols such as face masking requirements.

Section 2. Any action taken pursuant to Section 1 above shall at minimum be in accordance with Florida's "Parents' Bill of Rights" and protect parents' right to make decisions regarding masking of their children in relation to COVID-19.

Section 3. The Florida Commissioner of Education shall pursue all legal means available to ensure school districts adhere to Florida law, including but not limited to withholding state funds from noncompliant school boards violating any rules or agency action taken pursuant to Section 1 above.

Section 4. This does not prohibit the Florida Legislature from exploring legislation to further protect the fundamental rights of students and parents to be free from excessive, harmful regulation in schools.

Section 5. This Executive Order is effective immediately.



IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State of Florida to be affixed, at Tallahassee, this 30th day of July, 2021

RON DESANTIS, GOVERNOR

ATTEST:

SECRETARY OF STATE

FILED
2021 JUL 30 PM 3:45
DEPARTMENT OF STATE
TALLAHASSEE, FL

4