**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **JENNIFER RAE GUNTER**, individually and as a natural parent of **A.G.**; **ROBERT JAY SCHWARTZ**, individually and as a natural parent of **J.S.**; **HOLLY LYNN GOVE**, individually and as a natural parent of **M.G.**; **CHELSEA ELIZABETH PERRITT**, individually and as a natural parent of **L.P.**, | Case No. 3:21-cv-1661-YY  **OPINION AND ORDER** |

       Plaintiffs,

       v.

**NORTH WASCO COUNTY SCHOOL DISTRICT BOARD OF EDUCATION, CAROLYN BERNAL**, in her individual capacity and in her official capacity as Superintendent of the North Wasco County Public School District; and **REBECCA THISTLETHWAITE**, **DAWN RASMUSSEN**, **DAVID JONES**, **JOHN NELSON**, **BRIAN STEVENS**, **JOSE APARICIO**, **JUDY RICHARDSON**, all in their individual capacities and in their capacities as members of the North Wasco County School District Board of Education,

       Defendants.

Jennifer Rae Gunter, Robert Jay Schwartz, Holly Lynn Gove, and Chelsea Elizabeth Perritt. Plaintiffs *Pro se*.

Brett Mersereau, THE LAW OFFICE OF BRETT MERSEREAU, 2100 NE Broadway #119, Portland, OR 97232. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Plaintiffs Jennifer Rae Gunter, Robert Jay Schwartz, Holly Lyn Gove, and Chelsea Elizabeth Perritt have sued the North Wasco County School District (District) Board of Education (Board) and its Superintendent and Board members. Plaintiffs bring claims both on their own behalf, as parents of children attending school within the District, and on behalf of their minor children. Plaintiffs invoke 42 U.S.C. § 1983, asserting that the Board's compliance with a statewide regulation requiring that schools implement a mask mandate for all school staff, students, and other attendees violates Plaintiffs' rights under the U.S. and Oregon Constitutions.

Before the Court is Plaintiffs' motion a temporary restraining order (TRO), asking the Court to enjoin enforcement of the Board's mask mandate for all schools in the District. Also before the Court is Defendants' motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that Plaintiffs, who are all proceeding *pro se*, cannot represent other people, even their own children, without a lawyer. Thus, argue Defendants, the Court must dismiss all claims brought on behalf of Plaintiffs' minor children. Defendants also argue that Plaintiffs fail to state a claim for violation of their own rights under either the U.S. or Oregon constitutions. For the following reasons, the Court grants Defendants' motion to dismiss and denies Plaintiffs' motion for TRO as moot.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-*

*Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

Plaintiffs representing themselves, or proceeding *pro se*, receive special consideration from the Court. A court must liberally construe the filings of a *pro se* plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639

F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## BACKGROUND

### A. Oregon Health Authority's Mask Regulation

Under Oregon Revised Statutes § 413.042, the Director of the Oregon Health Authority (OHA) "may adopt rules necessary for the administration of the laws that the [OHA] is charged with administering." OHA has "direct supervision of all matters relating to the preservation of life and health of the people of [Oregon.]" Or. Rev. Stat. § 431.110(1). OHA also has the authority to, by rule, "prescribe the measures and methods for . . . controlling reportable diseases." Or. Rev. Stat. § 433.004(d).

On August 2, 2021, OHA approved Temporary Administrative Order PH 33-2021, which established a new temporary rule, Oregon Administrative Rule (OAR) 333-019-1015, effective from August 2, 2021 through January 28, 2022. This rule required that

> Schools must ensure that all individuals, including but not limited to staff, students, contractors and visitors wear a mask . . . when in an indoor setting:
>
>> (a) At school during regular school hours;
>>
>> (b) Engaged in educational activities . . . during regular school hours; and
>>
>> (c) At school when engaged in educational activities outside of regular school hours.

OAR 333-019-1015(3) (Aug. 2, 2021). Children under the age of two and persons engaged in certain activities such as eating, sleeping, playing a musical instrument, and participating in certain sports were exempt, and people could wear a face shield if they were unable to wear a mask due to medical reasons. A "mask" was defined as a cloth, polypropylene, paper, or other face covering that rests above the nose and below the mouth. The rule also expressly stated that it did not prohibit schools from complying with the Americans with Disabilities Act (ADA), the Rehabilitation Act, and the Individuals with Disabilities Education Act, allowing for reasonable accommodations. Any school that violated OAR 333-019-1015 was subject to civil penalties of $500 per day per violation.

OHA explained its determination of the need for the rule as follows:

> Children are required to attend school, which is a congregate setting where COVID-19 can spread easily if precautions are not taken. Two of the most important tools the state has to control COVID-19 are vaccination and masking. However, currently children under the age of 12 are not eligible to receive the COVID-19 vaccines authorized for emergency use. In order to protect students under age 12, individuals who are not vaccinated, and those with underlying health conditions that make them more susceptible to complications from COVID-19, as well as to minimize the disruption of student education in schools because of exposure to a confirmed or suspected case of COVID-19, requiring universal use of masks inside schools is necessary.

OAR 333-019-1015(1) (Aug. 2, 2021). In adopting this rule, OHA cited documents relied upon and provided links to Centers for Disease Control and Prevention (CDC) documents on masking science and K-12 guidance. Additionally, OHA explained why a temporary rule was justified:

> The [OHA] finds that failure to act promptly will result in serious prejudice to the public interest, the [OHA], and students and staff in K-12 schools. These rules need to be adopted promptly so that we can protect, to the greatest extent possible, students, staff and others from being exposed to or contracting COVID-19, for the upcoming 2021-2022 school year. A masking requirement will help to avoid school disruptions from COVID-19 school related outbreaks. Permanent rules cannot be adopted in time to be in effect for the upcoming school year.

On August 13, 2021, OHA approved Temporary Administrative Order PH 36-2021, which replaced PH 33-2021 and amended OAR 333-019-1015. This version of the rule raised the exemption age from two to five and added more sports and the act of officiating sports to the list of activities during which a mask was not needed.

On September 3, 2021, OHA approved Temporary Administrative Order PH 44-2021, replacing PH 33-2021 and amending OAR 333-019-1015. This version of the rule changed the requirement to "mask or face covering." The definition of "mask" was changed to "medical grade mask" and a new definition for "face covering" was added, defined as "a cloth, polypropylene, paper or other face covering that covers the nose and the mouth and that rests snugly above the nose, below the mouth, and on the sides of the face." This version also added a requirement for masks in outdoor settings if social distancing of six feet could not be maintained.

On November 23, 2021, OHA approved Temporary Administrative Order PH 84-2021, which replaced PH 44-2021 and amended OAR 333-019-1015. This is the current version of the rule. Like all of the other versions of OAR 333-019-1015, this version expires on January 28, 2022. This version of the rule changes the explanation of the need for the rule, removing the reference to vaccines not being authorized for children under 12, but keeps the other

justifications. The current rule removes the outdoor mask or face covering requirement if social distancing cannot be maintained and retains only the indoor mask or face covering requirement. In adopting this rule, the OHA noted that "[a] school must still provide reasonable accommodations and otherwise comply with the ADA" and other civil rights statutes. The rule keeps the other exemptions for ages five and over, playing certain sports, eating, sleeping, and engaging in other specified activities. It also keeps the allowance for people to wear a face shield if they cannot wear a mask or face covering due to medical reasons. It retains the penalty of $500 per day, per violation.

In October 2021, OHA issued a "Schools and Face Coverings Frequently Asked Questions (FAQ)."[1] In this document, the OHA answered, "Why the shift from local control?" with "Under governor Brown's Executive Order 21-15 we are still under a state of emergency related to COVID-19. Under ORS Chapter 431A, OHA has a responsibility/authority to protect public health."[2] This FAQ document also clarified, in responding to, "What is required and what is advisory?" that there will be locally submitted plans, but that several items, including "indoor face masks" are "requirements" whereas in comparison "[a]ll other decisions are local."

On December 10, 2021, OHA issued a Notice of Proposed Rulemaking. *See* 2021 Or. Reg. Text 601662 (Dec. 15, 2021). OHA proposed a rule entitled "Masking requirements in Schools: Vaccination Requirements for Teachers and School Staff." The masking rule proposed

---

[1] The Court considers this document on a Motion to Dismiss because it was referenced (and a URL provided) in Plaintiffs' Complaint. *See* ECF 1, Ex. AC at 8 n.6; *id.* Ex. N at 8.

[2] On December 21, 2021, Governor Brown issued Executive Order 21-36, which rescinded Executive Order 21-15 and replaced it with the terms of Executive Order 21-36. Governor Brown extended the state of emergency in Oregon due to COVID-19 through June 30, 2022, unless extended or terminated.

is OAR 333-019-1015. The vaccination rule is OAR 333-019-1030. OHA is accepting public comments on these proposed rules through January 24, 2022.

## B.  Plaintiffs and the Board

Plaintiffs' minor children attend school in the District. Compl. ¶¶ 1-2. The Board held a meeting on August 12, 2021 for community members to provide input or submit written comments on the District's draft Safe Return to In-Person Instruction and Continuity of Services Plan (School Return Plan). *Id.* ¶ 39; Ex. I. The Board held additional meetings on August 19, 2021 and August 26, 2021, presenting the draft School Return Plan. *Id.* ¶ 39, Ex. J-K. That plan was updated on August 26, 2021. *Id.* Ex. W. The School Return Plan included a mask mandate that mirrored the requirements of OAR 333-019-1015 as of that date.[3] Plaintiffs also allege that the District's School Return Plan followed the State of Oregon's "Ready Schools, Safe Learners Resiliency Framework," which describes the mask mandate. *Id.* Ex. N at 8-9. This includes the requirement that masks (or face shields for medical exceptions) are *required* by OHA, while "[o]ther COVID-19 mitigation protocols (physical distancing, airflow/ventilation, etc.) remain local decisions." *Id.* Ex. N at 8.

Plaintiff Jennifer Rae Gunter (Gunter), among others, objected to the proposed mask mandate at the August 19 and August 26, 2021 Board meetings. *Id.* ¶¶ 40-41, Exs. J-K. At the August 19, 2021 meeting, the Chair of the Board, after acknowledging the comments received, described the difference between Board policies and OARs that the Board is required to follow. *Id.* Ex. J at 4. He explained that the Board was following state law, the Board was required to

---

[3] None of the minutes attached to Plaintiffs' Complaint reflect any affirmative act by the Board adopting the School Return Plan. At oral argument, Gunter explained that she was told by the Board that the School Return Plan did not need to be specifically approved by the Board to be effective.

follow state law, the Board members took an oath to follow the law, and the Board did not have any option but to follow the state's requirements. *Id.* The Board Chair offered to provide input to state lawmakers.

Gunter requested that the District hire an environmental toxicologist or industrial hygienist to test the air in every classroom. *Id.* ¶¶ 40-41, Exs. K-L. The Board denied her request. *Id.* at Ex. L. Plaintiffs allege that masks increase carbon dioxide levels that children breathe to dangerous levels, causing impairment. *Id.* ¶¶ 49, 60. Plaintiffs also allege that the Board implemented OHA's mask mandate without considering what Plaintiffs assert is a growing volume of science showing that masks do not prevent the spread of the SARS-CoV-2 virus and, to the contrary, are harmful to children. *Id.* ¶¶ 60, 63, 64, Exs. AC, AF, AG. Plaintiffs also allege that masks are a "restraint" placing pressure on the mouth, in violation of Oregon Revised Statutes § 339.288.[4] *Id.* ¶ 51. Plaintiffs further allege that the mask requirement subjects Plaintiffs' children to harassment, bullying, intimidation, isolation, and potential discipline if they do not wear the mask correctly or if it slips below their nose or mouth. *Id.* ¶ 57. Plaintiffs also assert that having teachers require correct mask placement on students constitutes the practice of medicine without a license in violation of Oregon law.[5] *Id.* ¶¶ 57-58. Plaintiffs also

---

[4] The Court finds unpersuasive Plaintiffs' contention that a mask is an unlawful "restraint" placing pressure on the mouth in violation of Oregon law. *See* Or Rev. Stat. § 339.285(2)(a) (defining "restraint" as "the restriction of a student's *actions or movements* by holding the student or using pressure or other means" (emphasis added)).

[5] The Court finds unpersuasive the allegation that having school personnel insist on the correct placement of medical grade masks or face coverings in school (*i.e.*, above the nose and below the mouth) constitutes practicing medicine without a license.

allege that the fact that their children must wear masks equates to "slavery" or "servitude" of children.[6] *Id.* ¶¶ 53, 56.

Plaintiffs also include in their Complaint allegations reciting statements from a certified industrial hygienist and professional engineer, Stephen E. Petty, and attach his report as an exhibit to the Complaint. *Id.* ¶ 60, Ex. AC. Petty states that cloth and surgical masks, when perfectly sealed, have reported efficiencies of 10% and 12% in risk reduction and that the American Industrial Hygiene Association guidance recommends that only methods providing 90% or greater risk reduction should be used. *Id.* at Ex. AC p. 6. Petty explains that in normal use, face masks are not perfectly sealed and are even less effective, and the problem with fit and ineffectiveness is even greater in children. *Id.* Petty adds that the SARS-CoV-2 virus could more effectively be mitigated by: (a) opening windows and using fans to draw outdoor air into indoor spaces; (b) setting fresh air dampers to the maximum opening on HVAC systems; (c) overriding HVAC energy controls; (d) increasing the number of times indoor air is recycled; (e) installing needlepoint ionization technology to HVAC intake fans; and (f) installing inexpensive ultraviolet germicide devices into HVAC systems. Petty also describes a study opining that negative effects occur from prolonged mask wearing, including dizziness, listlessness, impaired thinking and concentration, and others. *Id.* at Ex. AC, pp. 10-11.

---

[6] At oral argument, Gunter argued that certain federal COVID-19 education relief funds are tied to having an approved back-to-school plan in place, which she asserted must include a mask mandate. Thus, argues Gunter, schools are requiring masks be worn by children so that the schools can continue to receive federal funds, which, Gunter asserts, equates to placing children in servitude for money. The Court finds this argument unpersuasive and finds Plaintiffs' allegation that requiring masks equates to slavery or placing children into servitude utterly without merit. Indeed, it reflects a serious misunderstanding of what constitutes slavery.

**DISCUSSION**

Defendants argue that Plaintiffs, who are not lawyers, cannot represent their minor children in court proceedings or bring legal claims on their behalf. Defendants also argue that Plaintiffs fail to state a claim for relief on any of their own individual claims. The Court address each argument in turn.

## A. Representative Claims

Plaintiffs argue that both the U.S. Constitution and the Oregon Constitution do not require that minors be represented in court by licensed attorneys. That may be true, but not every law or rule governing court proceedings is set forth in a constitution. The Ninth Circuit previously has held that although a non-attorney litigant may represent himself or herself *pro se* in a civil matter in court, "that privilege is personal to him [or her]" and does not entitle the non-attorney to represent others in legal matters. *C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987). This rule has broad application and includes most lawsuits in which parents attempt to assert claims on behalf of their minor children. *Johns v. Cnty of San Diego*, 114 F.3d 874, 876-77 (9th Cir. 1997).

In *Johns*, a *pro se* party sued San Diego County under 42 U.S.C. § 1983, both individually and on behalf of his minor son. *Id.* at 876. The district court dismissed all claims, and the Ninth Circuit affirmed.[7] *Id.* In analyzing whether the plaintiff could bring vicarious claims on behalf of his minor son, the Ninth Circuit agreed with other circuits in holding "that a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Id.* (quoting *Osei-Afriyie v. Med. Coll.*, 937 F.2d 876, 882-83 (3d Cir. 1991)). The court

---

[7] The plaintiff also brought a claim on behalf of an acquaintance, who signed a general power of attorney in favor of the *pro se* plaintiff. *Johns*, 114 F.3d at 876. The Ninth Circuit affirmed the dismissal of the acquaintance's claims as well, citing *C.E. Pope Equity*. *Id.*

explained: "The choice to appear *pro se* is not a true choice for minors who under state law cannot determine their own legal actions." *Id.* (citation omitted). The court continued: "It goes without saying that it is not in the interest of minors . . . that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected." *Id.* at 876-77 (quoting *Osei-Afriyie*, 937 F.2d at 883). The Ninth Circuit, however, reversed the district court's decision to dismiss the minor's claims with prejudice. *Id.* at 878. The Ninth Circuit held that although a minor has no capacity to sue in court, the minor should be given an opportunity to obtain counsel and refile claims later. *Id.*

Here, Plaintiffs are non-attorneys and are not represented by attorneys. Like the plaintiff in *Johns*, Plaintiffs may not vicariously bring claims on behalf of their children without representation by counsel. *See also Graham v. Portland Pub. Sch. Dist. #1J*, 2015 WL 1010534, at *4-5 (D. Or. Mar. 5, 2015). Defendants request that the Court dismiss all claims with prejudice. The Court declines to do so and instead dismisses the claims brought on behalf of the minor children without prejudice.

## B.  Parents' Claims Under the U.S. Constitution

In arguing that their rights as parents are being violated by the mask mandate, Plaintiffs allege two claims under the U.S. Constitution. Plaintiffs allege a substantive due process claim and procedural due process claim, both under the Fourteenth Amendment. The crux of Plaintiffs' challenge, however, appears to be against OAR 333-019-1015, and not against any act by the Board.[8] Plaintiffs allege that the Board implemented the School Return Plan, which the Board

---

[8] Indeed, at oral argument Plaintiffs asserted that *OHA* exceeded its authority in adopting OAR 333-019-1015 and that Oregon Governor Kate Brown exceeded her authority and

apparently did not affirmatively adopt, that contained the mask mandate required under

OAR 333-019-1015. That aspect of the School Return Plan, however, was not under local

control. Here, the Board simply complied with OHA's instruction to "ensure" that the schools in

the District follow OHA's mask mandate, or face significant monetary penalties. Thus, the mask

mandate to which Plaintiffs object appears to be the one established by the OHA in OAR 333-

019-1015, but the Defendants in this lawsuit are not the proper parties against whom Plaintiffs

may assert a challenge. For purposes of the pending motion, however, and without deciding the

matter, the Court will assume that the Board implemented an independent mask mandate in

compliance with OAR 333-019-1015 and that Plaintiffs are properly challenging the Board's

action in doing so.

    **1. Substantive Due Process**

        **a. Standard of Review**

As a threshold matter for evaluating a substantive due process claim, the Court must

determine whether Plaintiffs are alleging that they have been harmed by an "executive" or a

"legislative" act. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) ("While due process

protection in the substantive sense limits what the government may do in both its legislative and

its executive capacities, criteria to identify what is fatally arbitrary differ depending on whether it

is legislation or a specific act of a governmental officer that is at issue." (citations omitted)). For

"executive acts," a court should apply the "shock the conscience" test. *Id.* at 846-47. For

legislative or quasi-legislative acts, a court should apply the more traditional levels of scrutiny

(such as rational basis review, heightened or intermediate review, or strict scrutiny) based on the

---

otherwise violated the law in issuing executive orders relating to COVID-19. Those types of
challenges and arguments, however, do not relate to the Defendants named in this lawsuit.

specific right asserted. *See Reyes v. N. Texas Tollway Auth., (NTTA)*, 861 F.3d 558, 562 (5th Cir. 2017).

Executive action generally involves "a specific act of a governmental officer that is at issue." *Lewis*, 523 U.S. at 846. In other words, "[e]xecutive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch." *McKinney v. Pate*, 20 F.3d 1550, 1557 n.9 (11th Cir. 1994). "Legislative acts, on the other hand, generally apply to a larger segment of—if not all of—society; laws and broad-ranging executive regulations are the most common examples." *Id.*; *see also Reyes*, 861 F.3d at 562 (summarizing that "government action that applies broadly gets rational basis; government action that is individualized to one or a few plaintiffs gets shocks the conscience").

In *Harrah Independent School District v. Martin*, the Supreme Court treated a school board's rule as a legislative function, noting the "rule is endowed with a presumption of legislative validity, and the burden is on respondent to show that there is no rational connection between the Board's action and its conceded interest in providing its students with competent, well-trained teachers." 440 U.S. 194, 198 (1979). Thus, the Court here considers Plaintiffs' challenge to the Board's compliance with OHA's mask mandate requirement to be a challenge to a quasi-legislative function, and the Court reviews the Board's action under the traditional levels of review, rather than the "shock the conscience" test.[9]

---

[9] Even if the Court were to apply the "shock the conscience" test, the result would be the same. Plaintiffs fail to state a claim.

### b.  Whether Plaintiffs Assert a Fundamental Right

In considering what level of review to apply, the Court must first ascertain whether Plaintiffs' plausibly assert the violation of a fundamental right. *Reno v. Flores*, 507 U.S. 292, 302 (1993). A fundamental right is one that is "deeply rooted in our history and traditions" or is "fundamental to our concept of constitutionally ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997). Therefore, a "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Flores*, 507 U.S. at 302 (simplified).

Plaintiffs argue that their rights as parents to direct their children's education are being infringed. The Supreme Court and the Ninth Circuit have repeatedly declined to "accept[ ] the proposition that education is a 'fundamental right'" under the Constitution. *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 458 (1988); *see also Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("Public education is not a 'right' granted to individuals by the Constitution."); *Payne v. Peninsula Sch. Dist.*, 653 F.3d 863, 880 (9th Cir. 2011) (en banc) (stating that there is "no enforceable federal constitutional right to a public education"); *Guadalupe Org., Inc. v. Tempe Elementary Sch. Dist. No. 3*, 587 F.2d 1022, 1026 (9th Cir. 1978) ("[E]ducation, although an important interest, is not guaranteed by the Constitution. Therefore, it is not a fundamental right."). The Supreme Court has emphasized that the asserted right to have the state affirmatively provide an education was "significantly different from any of the cases in which the Court has applied strict scrutiny to state or federal legislation touching upon constitutionally protected rights," inasmuch as those prior cases all "involved legislation which 'deprived,' 'infringed,' or 'interfered' with the free exercise of some such fundamental personal right or liberty." *San Antonio Independent Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37-38 (1973). There was, therefore, a

"critical distinction" between "denying fundamental rights" and failing to do enough to provide a benefit that would facilitate the exercise of fundamental rights. *Id.* at 38-39.

In *Plyler*, the Supreme Court applied heightened (or intermediate) review, a test that has "generally been applied only in cases that involved discriminatory classifications based on sex or illegitimacy." *Kadrmas*, 487 U.S. at 459. *Plyler* involved an alleged discriminatory classification based on immigration status, and the Supreme Court has declined to apply heightened review to other public education cases not involving *Plyler's* "unique circumstances." *Id.* The Supreme Court, however, "has not yet definitively settled the questions whether a minimally adequate education is a fundamental right and whether a statute alleged to discriminatorily infringe that right should be accorded heightened . . . review." *Papasan v. Allain*, 478 U.S. 265, 285 (1986). The Supreme Court has cautioned against recognizing new fundamental rights under the Due Process Clause. *See Glucksberg*, 521 U.S. at 720 ("[W]e have always been reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this unchartered area are scarce and open-ended." (simplified)).

Plaintiffs do not argue that the challenged mask mandate deprives their children of a *minimally* adequate education,[10] nor do they explain how such a claim would belong to Plaintiffs as opposed to their minor children. Thus, the Court does not consider whether such an expansion of the Due Process Clause, and possible heightened scrutiny, is applicable in this case.

---

[10] At oral argument, Gunter raised for the first time the argument that by being forced to wear a mask her child was being deprived of a of a minimally effective education. The Court rejects this conclusory assertion. Being required to wear a mask does not deprive a child of a minimally adequate education, even accepting the alleged negative side effects from wearing masks that Plaintiffs assert.

Instead, Plaintiffs allege that their fundamental liberty interests as parents both to direct their children's education and to make health and safety decisions for their children are being infringed by the mask mandate. Each alleged right is addressed in turn.

### i. Right to make educational decisions

The Supreme Court has "recognized the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000). In the context of public education, however, these rights are not unfettered. In analyzing substantive due process, the Court looks to the specific right at issue.

The Supreme Court and the Ninth Circuit have recognized that parents have some fundamental rights in making educational decisions relating to their children's school. The Supreme Court has held that a state may not require children to go to a *public* school, *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925), or ban the teaching of certain subjects. *Meyer v. Nebraska*, 262 U.S. 390 (1923); *see also Leebaert v. Harrington*, 332 F.3d 134, 141 (2d Cir. 2003) ("*Meyer*, *Pierce*, and their progeny do not begin to suggest the existence of a fundamental right of every parent to tell a public school what his or her child will and will not be taught."). The Supreme Court, however, has "stressed the limited scope of *Pierce*," pointing out "that it lent no support to the contention that parents may replace state educational requirements with their own idiosyncratic views of what knowledge a child needs to be a productive and happy member of society" and "rather held simply that while a State may posit (educational) standards, it may not pre-empt the educational process by requiring children to attend public schools." *Runyon v. McCrary*, 427 U.S. 160, 177 (1976) (quotation marks omitted).

Thus, the fundamental rights of a parent include the right "to be free from state interference with their choice of the educational forum itself." *Fields v. Palmdale Sch. Dist.*, 427 F.3d 1197, 1207 (9th Cir. 2005). "[O]nce parents make the choice as to which school their

children will attend, [however,] their fundamental right to control the education of their children is, at the least, substantially diminished" and "they do not have a fundamental right generally to direct *how* a public school teaches their child." *Id.* at 1206 (emphasis and alteration in original) (rejecting a substantive due process challenge to a public school's questioning of children about sexual topics); *see also Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 461 (2d Cir. 1996) (stating that parents "have no constitutional right to provide their children with . . . education unfettered by *reasonable* government regulation." (emphasis in original)). "Due [P]rocess does not give parents the right to interfere with a public school's operations because issues such as school discipline, the content of examinations, and dress code are issues of public education generally committed to the control of state and local authorities." *McNeil v. Sherwood Sch. Dist. 88J*, 918 F.3d 700, 711 (9th Cir. 2019) (quotation marks omitted). "[R]equiring a public school to establish that a course of instruction objected to by a parent was narrowly tailored to meet a compelling state interest before the school could employ it with respect to the parent's child—would make it difficult or impossible for any school authority to administer school curricula responsive to the overall educational needs of the community and its children." *Leebaert*, 332 F.3d at 141.

Plaintiffs contend that they have a right to preclude their children from wearing masks at school during a public health emergency. "What is true for curricular requirements is just as true for other educational regulations like the Mask Mandate." *Doe v. Franklin Square Union Free Sch. Dist.*, 2021 WL 4957893, at *19 (E.D.N.Y. Oct. 26, 2021). Parents do not have the fundamental right to refuse such regulation. Indeed, "[l]ike a physician with a patient, a parent may justifiably be expected to act in the child's best interest. But it is that very motivation—laudable in itself—that might lead the parent to misjudge what is best for the health of the

community as a whole. That is precisely why we, as a society, have entrusted public institutions

to make such decisions." *Id.* Plaintiffs' general right to direct their children's education is an

insufficient basis to show that their right to preclude their children from wearing masks during a

pandemic is a fundamental right, deeply rooted in the country's traditions and the concepts of

ordered liberty.

### ii. Right to make medical and other health care decisions

Plaintiffs assert that the mask mandate impairs their ability to make medical and other

health care decisions on behalf of their children. This argument fails because the mask mandate

"no more requires a 'medical treatment' than laws requiring shoes in public places, *see Neinast*

*v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 593-94 (6th Cir. 2003), or helmets

while riding a motorcycle, *see Picou v. Gillum*, 874 F.2d 1519, 1522 (11th Cir. 1989)." *Franklin*

*Square Union Free Sch. Dist.*, 2021 WL 4957893, at *18; *see also Lloyd v. Sch. Bd. of Palm*

*Beach Cnty*, --- F.3d ---, 2021 WL 5353879, at *10 (S.D. Fla, Oct. 29, 2021) ("The Court agrees

that the circumstance of being required to wear a mask is distinguishable from compulsory

medical treatment and the School Board's Mask Mandate, therefore, does not implicate

Plaintiffs' right to bodily autonomy.").

Further, even if wearing masks could be considered a medical requirement, parents do

not have a fundamental right unilaterally to make every medical decision relating to their

children in schools. In the context of public education, courts regularly uphold restrictions

relating to medical requirements. *See, e.g.*, *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)

("[N]either rights of religion nor rights of parenthood are beyond limitation. Acting to guard the

general interest in youth's wellbeing, the state as *parens patriae* may restrict the parent's control

by requiring school attendance, regulating or prohibiting the child's labor, and in many other

ways. Its authority is not nullified merely because the parent grounds his claim to control the

child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." (footnotes omitted)); *Zucht v. King*, 260 U.S. 174, 176 (1922) (rejecting challenge to a Texas ordinance requiring that children be vaccinated to attend school); *Phillips v. City of New York*, 775 F.3d 538, 542 (2d Cir. 2015) (rejecting argument that New York's mandatory vaccine requirement for schools violates substantive due process and other provisions of the U.S. Constitution); *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (rejecting argument that ban on aversive treatments for children with certain disabilities violates substantive due process); *cf. Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972) (distinguishing the case at bar from other cases where restrictions were upheld "in which any harm to the physical or mental health of the child or to the public safety, peace, order, or welfare has been demonstrated or may be properly inferred").

In the context of addressing a public health concern, schools can establish certain medical requirements without implicating a fundamental interest, and the mask requirement falls within these precedents. *See Guilfoyle v. Beutner*, 2021 WL 4594780, at *17 n.8 (C.D. Cal. Sept. 14, 2021) ("To the extent Plaintiffs allege their children have a fundamental right not to wear a mask or a fundamental right not to be screened for COVID-19 before entering their schools, the Fourteenth Amendment does not recognize such rights."); *Klaassen v. Tr. of Ind. Univ.*, 2021 WL 3073926, at *38-39 (N.D. Ind. July 18, 2021) (collecting cases) ("The court declines the students' invitation to expand substantive due process rights to include the rights not to wear a mask or to be tested for a virus. These aren't rights so 'deeply rooted in the Nation's history and

tradition' and so 'implicit in the concept of ordered liberty' such that 'neither liberty nor justice

would exist if they were sacrificed.'" (quoting *Glucksberg*, 521 U.S. at 721)).

    In summary, the Court concludes that Plaintiffs fail to allege a violation of their

fundamental rights. The Court now joins other cases throughout the United States that have

considered mask mandates and applies rational basis review. *See, e.g.*, *Stepien v. Murphy*, 2021

WL 5822987, at *5 (D. N.J. Dec. 7, 2021); *Doe #1 v. Del. Valley Sch. Dist.*, 2021 WL 5239734,

at *18 (M.D. Pa. Nov. 11, 2021); *Lloyd*, 2021 WL 5353879, at *11; *Franklin Square Union Free

Sch. Dist.*, 2021 WL 4957893, at *19; *Oberheim v. Bason*, --- F. Supp. 3d ---, 2021

WL 4478333, at *8 (M.D. Pa. Sept. 30, 2021); *Guilfoyle*, 2021 WL 4594780, at *14; *Case v.

Ivey*, --- F. Supp. 3d ---, 2021 WL 2210589, at *21-22 (M.D. Ala. June 1, 2021).

    **c.  Analysis**

    Under rational basis review, in considering Plaintiffs' substantive due process claims, the

Court asks only whether the Board's action "bears a rational relation to a legitimate government

objective." *Kadrmas*, 487 U.S. at 461-62. The Supreme Court has emphasized that application of

rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of

legislative choices." *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach

Communs., Inc.*, 508 U.S. 307, 313 (1993)). Laws under review, including rules passed by a

school board, are presumed valid. *Harrah Indep. Sch. Dist.*, 440 U.S. at 198. The government

action passes muster "if there is any reasonably conceivable state of facts that could provide a

rational basis." *Heller*, 509 U.S. at 320. It is the burden of the party challenging a law to

"negat[e] every conceivable basis which might support it." *Id.*

    Here, there are several rational bases for the Board's decision. As the Board itself stated,

it was merely complying with OHA's statewide regulation. That regulation, OAR 333-019-1015,

requires that "schools must ensure" that students, staff, contractors, and visitors wear masks

indoors unless the person obtained a medical exemption or the student is under the age of five.

The regulation does not allow school districts to opt out and imposes significant daily fines per

violation for schools that violate the regulation. Plaintiffs do not respond to this explanation,

other than to argue generally that the administrative rule was not passed by the legislature and

thus is not enacted law. Plaintiffs, however, fail to recognize that a properly passed regulation

has the force of law.

The Court finds that the Board has a legitimate state interest in complying with a

statewide regulation. Although the regulation was passed by OHA and not the state legislature,

OHA is an executive agency of the state, given "direct supervision of all matters relating to the

preservation of life and health of the people of this state," Or. Rev. Stat. § 431.110(1), and

empowered to "adopt rules necessary for the administration of the laws that the Oregon Health

Authority is charged with administering," Or. Rev. Stat. § 413.042. OHA is authorized by

Oregon statute to pass rules, and it was reasonable for the Board to exercise its broad discretion

to comply with OAR 333-019-1015.

Additionally, the regulation itself provides other rational reasons for its mask

requirement. The regulation states:

> Children are required to attend school, which is a congregate
> setting where COVID-19 can spread easily if precautions are not
> taken. Two of the most important tools the state has to control
> COVID-19 are vaccination and masking. In order to protect
> students under age 12, individuals who are not vaccinated, and
> those with underlying health conditions that make them more
> susceptible to complications from COVID-19, as well as to
> minimize the disruption of student education in schools because of
> exposure to a confirmed or suspected case of COVID-19, requiring
> universal use of masks or face coverings inside schools is
> necessary.

OAR 333-019-1015(1).

The regulation provides three additional reasons: to protect vulnerable persons, to reduce disruption in schools when there is a confirmed COVID-19 case, and to prevent the spread of COVID-19. The Court finds that the Board has a legitimate state interest in all three of these interests. The Court next considers whether the mask mandate is rationally related to any of the legitimate state interests found by the Court.

The mask mandate is clearly rationally related to complying with OAR 333-019-1015. It is necessary to comply with the regulation. The persons that OHA's mask requirement states it is intended to protect—unvaccinated persons and those with underlying health conditions—may be staff at the schools, other students, or family members of students who might become exposed to the COVID-19 virus from classmates and then bring the virus home to the vulnerable family member. Plaintiffs' argument that children do not get sick from the virus, even if true (and the Court does not further address that contention at this time), does not repudiate the legitimate state interest in protecting other vulnerable persons, whether other students, staff, contractors, or family members, who may get seriously ill from the virus. As explained by another U.S. District Court Judge in evaluating a school mask mandate,

> The United States Supreme Court instructs us that "schools must teach by example the shared values of a civilized social order." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986). One such value is that, when faced by a common catastrophe like a pandemic, we must all make some sacrifices to protect ourselves and our more vulnerable neighbors. Citizens on both sides of this issue surely have in common a concern for our children's welfare, although they may differ as to how that goal should be pursued. And all must admit that these [mask mandates] impose some hardship upon those who are required to wear masks while in school buildings. Considered apart from their health benefits, the masks may also be seen to have educational disadvantages. Nevertheless, the decision to impose the in-school mask mandate is a rational one, and its burden on students and others is easily justified by the government's interest in controlling the spread of COVID-19 while maintaining in-person schooling.

* * *

> The [mask mandates], however, are not meant only to protect
> children. Schools employ many teachers and staff members who
> are at higher risk of hospitalization and death from COVID and
> can contract it from children. What is more, many students live
> with older or immunocompromised family members who are also
> at higher risk of serious illness from COVID. So even if COVID-
> 19 posed no danger at all to children, it could be rational to require
> masks in school to reduce secondary infections and protect more
> vulnerable people from illness.

*Stepien*, 2021 WL 5822987, at *1, 7 (citation omitted).

The Board also rationally could have concluded that having only vulnerable children

wear masks, as suggested by Plaintiffs, is not a viable solution because it may violate the

Americans with Disabilities act and may "smack[] of placing a disabled child in a stigmatizing

bubble . . . as if he or she were wearing a badge of infamy." *R.K. by & through J.K. v. Lee*, 2021

WL 5860924, at *24 (M.D. Tenn. Dec. 10, 2021) (enjoining enforcement of a Tennessee law

banning mask mandates in schools that purported to create an "accommodation" for students

with disabilities and those in their immediate vicinity for a long duration to wear masks). It also

does not serve to protect other vulnerable persons, such vulnerable family members at home,

staff, and contractors.

Plaintiffs' primary argument with respect to the state interest of masks protecting

vulnerable persons, as well as the legitimate state interest in reducing the spread of COVID-19,

is that masks are not effective in reducing the spread of the SARS-CoV-2 virus. Plaintiffs

provide statements from Petty, who recites some studies in support of his opinion (some of

which have been withdrawn by their publisher), and attach citations to other studies and articles

regarding the ineffectiveness of masks. Plaintiffs also attach documents to their Complaint that

support the conclusion that masks are effective in preventing the spread of COVID-19. *See*

Compl. Ex. N, at p. 8 (citing a CDC Morbidity and Mortality Weekly Report emphasizing the

importance of face coverings in schools in the context of the Delta variant); *id.* at p. 17 (noting

that masks "limit the release of most respiratory droplets and aerosols"); *id.* Ex. X at p. 2 (noting

that the CDC recommended "[u]niversal and correct wearing of masks" in schools); *id.* Ex. iii

at p.3 (CDC Scientific Brief reporting that "community use of well-fitting masks (*e.g.*, barrier

face coverings, procedure/surgical masks)" is one of the preventative measures that "remain

effective"). All versions of OAR 333-019-1015 also cite CDC studies on mask effectiveness and

K-12 guidance to support the need for masks. Thus, even viewing all facts in the light most

favorable to Plaintiffs, there is at least a scientific debate on the effectiveness of masks.

"Other federal courts that have confronted the scientific debate over masks when

conducting rational basis review for mask mandates have concluded that mask requirements are

rationally related to the government's legitimate interest in combatting the spread of

COVID-19." *Lloyd*, 2021 WL 5353879, at *13 (collecting cases). This is because when public

officials "undertake to act in areas fraught with medical and scientific uncertainties, their latitude

must be especially broad." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613

(2020) (Roberts, C.J., concurring) (simplified). Further, under rational basis review, "[t]hough a

party may cite studies that support a conclusion different from the one the [agency] reached, it is

not [a court's] role to weigh competing scientific analyses." *Ecology Ctr. v. Castaneda*, 574 F.3d

652, 659 (9th Cir. 2009). Indeed, under rational basis review, "legislative choice is not subject to

courtroom fact-finding and may be based on rational speculation unsupported by evidence or

empirical data." *FCC*, 508 U.S. at 315. In sum, "[t]he Due Process Clause does not require

scientific consensus to justify government action." *Guilfoyle*, 2021 WL 4594780, at *16 n.7. The

Court finds that the Board's action in implementing a mask mandate in compliance with OHA's

requirement was rationally related to the legitimate state interests of reducing the spread of COVID-19 and protecting the more vulnerable persons within the population.

Additionally, Plaintiffs do not negate the regulation's stated reason that requiring masks will reduce the disruption caused if there is a confirmed outbreak of COVID-19. Without universal use of masks, it is rational that the school's response to an outbreak would be more significant and disruptive than if everyone in the school had been wearing masks. For all of these reasons, Plaintiffs fail to allege that Defendants had no rational basis for their decision. Thus, Plaintiffs fail to state a claim for violation of their substantive due process rights.

### 2. Procedural Due Process

"The Due Process Clause forbids the governmental deprivation of substantive rights without constitutionally adequate procedure." *Shanks v. Dressel*, 540 F.3d 1082, 1090-91 (9th Cir. 2008). To prevail on a procedural due process claim, a plaintiff must establish: (1) a constitutionally protected liberty or property interest; (2) a deprivation of that interest by the government; and (3) the lack of adequate process. *Id.* at 1090. "Notice and a meaningful opportunity to be heard are the hallmarks of procedural due process." *Ludwig v. Astrue*, 681 F.3d 1047, 1053 (9th Cir. 2012) (simplified). As discussed above, Plaintiffs fail to show that they have a constitutionally-protected interest in being allowed to refuse to let their children wear masks while at school. Even if that were a protected liberty interest, however, Plaintiffs fail to allege what additional process was due that they did not receive. Plaintiffs allege that the Board provided notice of the School Return Plan, including the mask mandate, and held open meetings on August 12, 19, and 26, 2021. The Board allowed public comments at the meetings and accepted written comments. Thus, Plaintiffs had notice and an opportunity to be heard.

Plaintiffs argue that they wanted a survey sent out to parents about mask usage and that the Board should have obtained more parental input before implementing the School Return

Plan. The Ninth Circuit, however, has rejected the argument that a school district must consider

parental input before implementing a policy, even when a state regulation required the school

district to obtain parental approval:

> As the district court correctly concluded, however, even if the
> manners in which these District schools implemented their uniform
> policies violated the *Regulation*, they did not violate the
> *Fourteenth Amendment*. It has long been recognized that
> individuals have no due process right to participate in government
> policymaking. . . . Accordingly, although it might be preferable for
> schools to seek parental approval before instituting controversial
> school policies, and it might be a violation of *state law* for schools
> not to do so if a local statute or regulation so dictates, the Due
> Process Clause in no way requires this.

*Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008) (emphases in original)

(footnotes and citation omitted). Thus, Plaintiffs fail to state a claim for violation of their federal

procedural due process rights.

## C.  Parents' Claims Under Oregon's Constitution

### 1.  Substantive Due Process

Plaintiffs assert a substantive due process claim under Article I, sections 1 and 10 of the

Oregon Constitution. Plaintiffs allege that these provisions guarantee a "fundamental right to a

public education and to an education in a safe and healthy environment." ECF 1, ¶ 91. The

Oregon Constitution, however, contains no due process clause that provides for substantive due

process similar to the federal right explained by the U.S. Supreme Court with respect to the

Fourteenth Amendment. *See State v. Wagner*, 305 Or. 115, 145-46 (1988), *abrogated on other*

*grounds*, *Penry v. Lynaugh*, 492 U.S. 302 (1989) (concluding that no provision of the Oregon

Constitution contains a due process clause and stating, "this court will not treat 'remedy by due

course of law' as synonymous with 'due process'"); *Smith v. Dep't of Corr.*, 219 Or. App. 192,

196 (2008) ("Article I, section 10, is not a 'due process' clause."); *Roberts v. Gray's Crane &*

*Rigging, Inc.*, 73 Or. App. 29, 35 (1985) ("[A]s both the Supreme Court and this court have recently stressed, this state's constitution has no due process clause."); *State v. Lyon*, 65 Or. App. 790, 795 (Or. App. 1983) ("The Oregon Constitution has no Due Process Clause. It has been said that 'when Oregon lawyers and judges invoke due process . . ., they are in the area of federal law.'" (alteration in *Lyon*) (quoting Linde, *Without "Due Process"—Unconstitutional Law in Oregon*, 49 Or. L. Rev. 125, 145-46 (1970))).

Considering Plaintiffs' *pro se* status, Defendants identify Article VIII, section 3 as a possible basis for a right to a basic education. Defendants argue that they have not violated that right, if such a right exists. Article VIII, section 3 of the Oregon Constitution provides: "The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools." As a threshold matter, it is unlikely that the remaining Plaintiffs and Defendants would be the proper parties to litigate any claim under Article VIII, section 3. The Court has dismissed Plaintiffs' claims brought on behalf of their children, leaving only Plaintiffs' claims brought on their own behalf as parents. Thus, it is uncertain whether the remaining Plaintiffs would have standing to assert that the State has failed to provide a basic public education. Further, it appears that Defendants—the Board, superintendent, and members of the Board—would not be proper defendants because section 3 only directs the state *legislature* to establish a public school system and imposes no obligation on the local administrators of schools. Other suits involving Article VIII, section 3 name the State of Oregon or the state legislature as defendants. *See, e.g.*, *Pendleton Sch. Dist. 16R v. State*, 345 Or. 596 (2009) (State defendants); *Coalition for Equitable Sch. Funding, Inc. v. State*, 311 Or. 300 (1991) (State and Legislative Assembly defendants).

In any event, putting aside these threshold issues, the mask mandate does not violate Article VIII, section 3. The Oregon Supreme Court has held that section 3 requires that the legislature do no more than "establish free public schools that will provide a basic education" and a "minimum of educational opportunities." *Pendleton Sch. Dist. 16R*, 345 Or. at 615-16. Further, in *Pendleton School District 16R*, the Oregon Supreme Court rejected the argument that section 3 requires schools to meet certain educational or quality standards. *Id.* Plaintiffs have not alleged that District schools failed to provide a basic education with a minimum of educational opportunities. Thus, even construing Plaintiffs' substantive due process claim under the Oregon Constitution as a claim under Article VIII, section 3, and assuming the correct plaintiffs and defendants, Plaintiffs have still failed to state a claim for a violation of any right to a public education under the Oregon Constitution.

### 2. Procedural Due Process

Plaintiffs also assert a procedural due process claim under Article I, sections 1 and 10 of the Oregon Constitution. Plaintiffs have alleged no basis and provided no authority for the proposition that Article I, section 1 guarantees a right to procedural due process. Instead, Plaintiffs rely exclusively on section 10 for their procedural due process claim. The Court therefore considers only whether Plaintiffs have stated a claim under Article I, section 10 for a violation of any right to procedural due process. Article I, section 10 provides:

> No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation.

It is unclear under Oregon law whether the "due course of law" clause is coextensive with the right to procedural due process under the Fourteenth Amendment of the U.S. Constitution. In 1983, the Oregon Court of Appeals stated that the "procedural due process

protection of the 'due course of law' provision is essentially the same as that of the Fourteenth Amendment" and held that an Oregon statute violated a right to procedural due process under both section 10 of the Oregon Constitution and the Fourteenth Amendment of the U.S. Constitution. *Carr v. SAIF Corp.*, 65 Or. App. 110, 115, 124 (1983). The Oregon Supreme Court, however, later extensively analyzed section 10 and concluded that its purpose was to prohibit the legislature from abrogating remedies to common law rights without supplying an adequate alternative. *Jensen v. Whitlow*, 334 Or. 412, 418 (2002).[11]

Further, the Oregon Court of Appeals has explained that section 10's "principal function is to bar the legislature from eliminating common-law remedies that were available to redress injuries to 'person, property, or reputation,' without providing a 'constitutionally adequate substitute remedy.'" *Smith v. Dep't of Corr.*, 219 Or. App. 192, 196 (2008) (quoting *Jensen*, 334 Or. at 417-18). The Oregon Supreme Court, however, has not expressly rejected that a right to procedural due process exists under section 10. The Court, therefore, will consider how the Oregon Supreme Court likely would rule if it faced the question of whether Article I, section 10 provides a right to procedural due process. *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990) (stating that without specific state supreme court guidance, a federal court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance").

Considering the Oregon Supreme Court's analysis of section 10 in *Jensen*, and the Oregon Court of Appeals' subsequent explanation in *Smith*, the Court concludes that the Oregon Supreme Court would interpret the "due course of law" clause of section 10 as only concerning

---

[11] The Oregon Supreme Court has subsequently further analyzed Article I, section 10 in *Horton v. OHSU*, 359 Or. 168 (2016), and *Busch v. McInnis Waste Systems, Inc.*, 366 Or. 628 (2020), both of which focus on remedies and do not discuss due process.

the ability of the legislature to eliminate common law remedies and not providing a separate

right of procedural due process. Plaintiffs have not alleged that the legislature abrogated any

common law remedy without providing an adequate alternative. But even assuming that

section 10 enshrines a right to procedural due process that is coextensive with the right to

procedural due process under the Fourteenth Amendment, Plaintiffs still fail to state a claim for a

violation of their procedural due process rights under the Oregon Constitution for the reasons

described above with respect to their rights of procedural due process under the U.S.

Constitution.

**D.  Plaintiffs' Motion for TRO**

Because the Court grants Defendants' motion to dismiss all claims asserted by Plaintiffs,

the Court denies Plaintiffs' motion for TRO as moot. Plaintiffs' motion for TRO, however, is

denied without prejudice and with leave to renew if either (a) the Plaintiffs who are parents or

(b) the Plaintiffs who are minor children if represented by legal counsel, file an amended

complaint that cures the deficiencies identified in this Opinion and Order.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss (ECF 14) and dismisses Plaintiffs'

claims without prejudice. The Court DENIES AS MOOT Plaintiffs' Motion for TRO (ECF 2).

**IT IS SO ORDERED**.

DATED this 22nd day of December, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge